■ In the Matter of CHAD D., an Infant. LaSHEAN D., Respondent; COMMISSIONER FOR THE ADMINISTRATION OF CHILDREN'S SERVICES, Respondent. [692 NYS2d 18] —Order, Family Court, Bronx County (Myrna Martinez-Perez, J.), entered on or about July 16, 1998, dismissing a petition by the Administration for Children's Services (ACS) for the extension of foster care placement and discharging the subject child to the respondent mother under ACS supervision, unanimously reversed, on the law and the facts, and in the exercise of discretion, without costs, the petition reinstated, and the matter remanded for a hearing pursuant to Family Court Act § 1055.

Chad D., born December 9, 1992, was the subject of a neglect petition based on the discovery of traces of cocaine and ethanol in his blood at birth. He was initially placed in non-kinship foster care, and then placed with his great-aunt, with whom he has lived since 1994. Respondent mother was initially unresponsive to attempts by ACS to involve her in Chad's upbringing. However, in 1996, after her release from prison, she entered and successfully completed a drug treatment program and a parenting skills class, and cooperated with ACS to prepare for regaining custody of Chad. She has had unsupervised overnight weekend visitation with Chad since August 1996.

Both Chad's mother and his great-aunt are in agreement that the ultimate goal is permanent placement with his mother, but the transition has allegedly been difficult. Chad and his mother have been in therapy since November 1997. Meanwhile, successive petitions for 12-month extensions of foster care

placement were filed by ACS and granted until January 1998. At that time, the court granted only a six-month extension, and ordered that the overnight visitation and therapy continue, so as to help Chad adjust to living with his mother.

The subject of this appeal is the most recent petition by ACS for extension of foster care placement, filed in June 1998. ACS recognized that Chad's mother had made progress, in that she had completed drug treatment and parenting skills classes, had a job and a safe, clean apartment, and was raising Chad's younger brother without incident. On the other hand, the petition emphasized that Chad "continue[d] to demonstrate overt rebellion to bonding with his mother" and was strongly opposed to moving in with her. An extension was requested in order to allow Chad to continue therapy until these issues were resolved successfully.

On July 16, 1998, the first date on which the matter had been calendared, the parties appeared for the first time before the court regarding the June 1998 petition. Petitioner's counsel was present, as were respondent mother and her counsel. Significantly, though, neither the therapist, nor the social worker familiar with the case, nor Chad's law guardian was present. Judy Ocasio of the Legal Aid Society stood in for Joy Rosenthal, Chad's regular law guardian, who was ill.

A July 8, 1998 letter from the therapist was presented to the court, in which she stated that Chad was experiencing stress at the prospect of reuniting with his mother, but that this was a normal separation process that could be resolved through continued therapy. The letter did *not* say that Chad was ready to move in with his mother immediately. In addition, Ms. Ocasio cautioned that she was only standing in for the law guardian who was knowledgeable about the case. Ms. Ocasio's impression, from talking with the social worker and other involved parties, was that Chad's adjustment was a slow process and required more therapy and visitation to break down his current "completely adamant" opposition to living with respondent mother. As recently as June 1998, Chad had apparently expressed these feelings to the social worker.

For these reasons, ACS and Ms. Ocasio both urged the court to extend the foster care placement for another six months. In the alternative, Ms. Ocasio suggested, the court should hold a hearing to determine Chad's best interests, at which the therapist, the social worker and Ms. Rosenthal could present a more complete factual picture. However, the court denied both requests, on the grounds that respondent mother had complied with ACS requirements and that Chad's normal separation

anxiety did not warrant further delay. The court ordered Chad to be released to respondent under ACS supervision, with visitation rights for his great-aunt. Enforcement of the order was stayed pending resolution of this appeal.

The Family Court improvidently exercised its discretion in failing to adjourn the matter for a hearing pursuant to Family Court Act § 1055, at which persons with knowledge and responsibility for Chad's case could testify as to whether immediate placement was in his best interests (*Matter of David S.*, 221 AD2d 241). It was particularly inappropriate to dismiss the petition in the absence of Chad's law guardian (*Matter of Mekeia F.*, 222 AD2d 325, 326). Not one of the professionals who had worked with this family was present to give an informed opinion about the appropriate living arrangements for Chad at this stage of the placement process, nor did any of them make a written statement recommending immediate placement with respondent mother.

While the court's desire to end the uncertainty in the child's living arrangements is understandable, the court was too quick to dismiss Chad's emotional difficulties as a "normal transitional thing" when very little about his life has been normal. For his entire life, Chad lived with someone other than his mother. He barely had any contact with her for the first couple of years. After living with his great-aunt for almost five years, Chad now faces the prospect of leaving her and going to live with someone new. While respondent mother is no longer a stranger, weekend visitation is different from full-time custody. It is understandable that the transition might be unusually hard. The evidence of his continuing emotional difficulties and the absence of knowledgeable witnesses at the July 16, 1998 court date raised a serious factual dispute that required a hearing pursuant to Family Court Act § 1055 (*Matter of Ingrid R.*, 209 AD2d 177). Concur—Ellerin, P. J., Rosenberger, Wallach and Saxe, JJ.